## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FRANCISCO ZEPEDA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-CV-818-MAB** |
| | ) | |
| **WEXFORD HEALTH CARE** | ) | |
| **SOURCES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Latoya Hughes, in her official capacity as the Director of the Illinois Department of Corrections (Doc. 45), as well as Plaintiff's Motions for Recruitment of Counsel (Docs. 51, 53) and Motion for Status (Docs. 54). For the reasons set forth below, Defendant Hughes' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is GRANTED (Doc. 45), Plaintiff's Motion for Recruitment of Counsel is GRANTED (Doc. 53), Plaintiff's Motion to Appoint Counsel is DENIED as MOOT (Doc. 51), and Plaintiff's Motion for Status is GRANTED (Doc. 54).

## BACKGROUND

Plaintiff Francisco Zepeda filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Pinckneyville Correctional

Center ("Pinckneyville") (*see* Docs. 1, 10). Plaintiff's First Amended Complaint alleges that he suffers from sleep apnea and uses a CPAP machine to breathe at night (Doc. 11, p. 2). On January 28, 2022, Plaintiff tested positive for Covid-19 (*Id.*). One day later, a Jane Doe nurse and John Doe Correctional Officer came to Plaintiff's cell and confiscated his CPAP machine (*Id.*). Although Plaintiff attempted to explain that he needed a CPAP machine to help him breathe while suffering from Covid-19, the nurse insisted that the CPAP machine had to be confiscated for 21 days due to Plaintiff's Covid-19 diagnosis (*Id.*).

On February 7, 2022, Plaintiff requested pain medication to help alleviate the severe headaches he developed due to the loss of his CPAP machine (*Id.* at p. 3). On February 23, 2022, Plaintiff spoke with a nurse and requested his CPAP machine be returned because more than 21 days had lapsed since it was confiscated (*Id.*). Plaintiff's wife also called the prison on that date and spoke with Defendant Christine Brown, the Healthcare Unit Administrator at Pinckneyville (*Id.*). Plaintiff's wife asked Defendant Brown when Plaintiff's CPAP machine would be returned because Plaintiff was suffering from pitting edema, headaches, fatigue, and increased hypertension (*Id.*). Defendant Brown told Plaintiff's wife that the prison was in the process of returning all of the confiscated CPAP machines (*Id.*).

On March 3, 2022, an inmate told Plaintiff that his confiscated CPAP machine had been returned to him (*Id.*). Although Plaintiff sent a request to healthcare, medical records from that time indicate Plaintiff's CPAP machine was either lost or deemed non-functional due to mold (*Id.*; *see also* Doc. 47 at pp. 83, 85-86). On March 11, 2022, Plaintiff

was informed by a nurse that his CPAP machine would have to be reissued to him (Doc. 11 at p. 3). Two days later, Plaintiff wrote to Defendant Christel Crow, an Assistant Warden at Pinckneyville, informing her of his medical issues and his efforts to have his CPAP machine returned (*Id.*). Plaintiff then spoke with a counselor, who notified Plaintiff on March 24, 2022, that his CPAP machine had been lost and a new machine was already ordered (*Id.* at pp. 3-4). Plaintiff filed a grievance thereafter (*Id.* at p. 4). Finally, on May 17, 2022, Plaintiff received a replacement CPAP machine (*Id.*).

Plaintiff filed his initial Complaint on March 20, 2024 (Doc. 1). Thereafter, Plaintiff filed the operative, First Amended Complaint on June 24, 2024 (Doc. 10). The Court conducted a preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A and Plaintiff was allowed to proceed on the following claims:

**Count 1:** Eighth Amendment deliberate indifference claim against Jane Doe Nurse and John Doe Officer for initially confiscating Zepeda's CPAP machine.

**Count 2:** Eighth Amendment deliberate indifference claim against Christine Brown for delaying the return of Zepeda's CPAP machine.

**Count 3:** ADA and/or RA claim against [Defendant Latoya Hughes, in her official capacity as the Director of the IDOC] for the initial confiscation and the delay in returning Zepeda's CPAP machine.

**Count 4:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having policies and practices that led to the delays in returning Zepeda's CPAP machine.

**Count 5:** Eighth Amendment deliberate indifference claim against Warden Christel Crow for failing to ensure that Zepeda received his CPAP machine.

(Doc. 11 at pp. 4-7).

As outlined in the Court's Merit Review Order, John Barwick, the Warden of Pinckneyville, was added as a Defendant, in his official capacity, to help identify the unknown Defendants (*Id.* at p. 5). However, on April 24, 2025, Defendants John Doe Officer and Jane Doe Nurse, as well as Defendant Barwick, were dismissed without prejudice because Plaintiff failed to timely identify the unknown Defendants (Doc. 48). Consequently, the claim in Count 1 which was proceeding against the unknown Defendants was also dismissed without prejudice (*Id.*).

Meanwhile, on April 10, 2025, Defendant Hughes filed the instant Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 45). Plaintiff timely filed a Response in Opposition on April 23, 2025 (Doc. 47). Defendant Hughes then filed a Reply in Support on May 1, 2025 (Doc. 49). None of the other Defendants timely filed an exhaustion-based summary judgment motion.

Additionally, on May 1, 2025, Plaintiff filed a Motion to Appoint Counsel and Response to the Court's Order dismissing Defendant Barwick and the two unknown Defendants (Docs. 51, 52). Approximately one month later, Plaintiff filed a second Motion for Recruitment of Counsel (Doc. 53). Lastly, on November 6, 2025, Plaintiff filed a Motion for Status (Doc. 54).

## LEGAL STANDARD

### I.    *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV.

P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). Nevertheless, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## II.    *Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the

inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving.[1] *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

### III.    *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a

---

[1] In most instances, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, the Court is able to rule upon Defendant Hughes' motion without conducting a hearing as there are no material issues of fact that require a hearing to resolve. *See Robinson v. Budde*, No. 18-CV-6998, 2021 WL 1722857, at *4 (N.D. Ill. Apr. 30, 2021) ("Since the parties agree on the facts, there is no need for a hearing.").

written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Likewise, if an inmate seeks to appeal the warden's decision on a grievance that has been found to be an emergency, the ARB is also required to expedite processing of the grievance. *Id.* at § 504.850(f).

### Discussion

I. *Defendant Hughes' Motion for Summary Judgment on the Issue of Exhaustion*

    a. *Grievance No. 980-04-22*

Defendant Hughes has presented evidence, which Plaintiff has not disputed, which demonstrates that only one grievance is potentially relevant to the issue of whether Plaintiff exhausted his administrative remedies for his ADA/RA claim (*see* Doc. 45-1, pp. 1-2; Doc. 45-2, pp. 4-5) (Plaintiff's ARB Grievance Log and a supporting affidavit from

ARB Chairperson Ryan Nothnagle). That grievance, Grievance No. 980-04-22, was dated April 4, 2022, and deemed by the Warden to be an emergency one day later (Doc. 45-1 at pp. 6-7). On the top of Grievance No. 980-04-22, Plaintiff marked that the nature of his grievance was "Medical Treatment." (*Id.* at p. 6). Plaintiff then provided a summary of events, that is substantially similar to those contained in his First Amended Complaint, which explained how his CPAP machine was confiscated by an officer and a nurse on January 29, 2022 (*Id.*).

The grievance then summarized several of the subsequent events related to Plaintiff's CPAP machine, including: (1) Plaintiff's February 7, 2022, request for pain medication to assist with headaches he was constantly experiencing after his CPAP machine had been confiscated; (2) his conversation with a nurse on February 23, wherein the nurse indicated she did not know when the CPAP machines would be returned; (3) his wife's call with Defendant Brown on February 23 asking about Plaintiff's CPAP machine; (4) a request Plaintiff sent to healthcare on March 3 informing them of his ongoing ailments related to the loss of his CPAP machine including pitting edema, headaches, fatigue, and blood pressure, and requesting his CPAP machine be returned; (5) Plaintiff learning that another inmate had his confiscated machine returned on or before March 3; (6) the follow-up request Plaintiff sent to healthcare on March 10 repeating his medical issues and requesting his CPAP machine be returned; (7) Plaintiff learning from a nurse on March 11 that his CPAP machine would have to be reissued; (8) Plaintiff's letter to Defendant Crow on March 13, informing her of his health issues related to the loss of his CPAP machine and the need for it to be returned because it was

prescribed for a chronic illness; and (9) Plaintiff's conversation with his counselor and his counselor's reply on March 24, 2022, which indicated that a replacement CPAP was ordered (*Id.* at p. 7).

Plaintiff concluded the body of Grievance No. 980-04-22 by stating, "[i]t has been approximately 65 days since my CPAP was taken and Pinckneyville C.C. has displayed a deliberate indifference to my healthcare needs for a chronic illness that has been confirmed and diagnosed by the [IDOC] by refusing to supply me with my prescribed medical device, CPAP. This deliberate indifference has created additional comorbidities and has exacerbated other health issues, which the CPAP treatment controlled for me." (*Id.*). Additionally, in the relief requested section, Plaintiff sought the immediate return of his CPAP machine and all necessary supplies, as well as to not be retaliated against for filing medical grievances. (*Id.* at p. 6).

Grievance Officer C. Hale reviewed Plaintiff's grievance on April 13, 2022, and determined that it should be affirmed (*Id.* at p. 4). The Grievance Officer contacted Defendant Brown (the HCUA at Pinckneyville) who explained that healthcare was instructed to not allow CPAP machines in cells with Covid-19 quarantines (*Id.* at p. 5). Defendant Brown's response then acknowledged that Plaintiff's CPAP machine could not be found and Wexford had ordered him a new machine and mask, which was to be delivered to Plaintiff as soon as it was received. (*Id.*). The Warden concurred in the Grievance Officer's report and recommendation on April 15, 2022 (*Id.* at p. 4).

Plaintiff appealed the Warden's decision to the ARB one week later (*Id.*). The ARB board member who reviewed Plaintiff's appeal contacted Pinckneyville to see if Plaintiff

had received a new CPAP machine to replace the one that had been lost after its
confiscation (*see* Doc. 47 at p. 96). Defendant Brown responded that a replacement CPAP
machine had been ordered on March 14 and, according to Wexford, takes 6 to 8 weeks to
arrive (*Id.*). As such, Defendant Brown wrote that she requested Wexford to check on it,
and they anticipated its arrival in the next week (*Id.*). Ultimately, the ARB determined
Plaintiff's appeal to be MIXED, finding that "the facility affirm the machine was lost and
they have ordered a new machine on March 14th, however the facility was advised that it
would take up to 8 weeks for delivery." (Doc. 45-1 at p. 3).

> b. <u>Analysis</u>

Defendant Hughes argues that she is entitled to summary judgment on Count 3
because Grievance No. 980-04-22 failed to provide prison officials with notice of
Plaintiff's ADA/RA claim (*see generally* Doc. 45). In response, Plaintiff emphasizes that
his grievance identified his chronic illness of sleep apnea and the harms he was suffering
due to the absence of his CPAP machine (*see generally* Doc. 47). Therefore, Plaintiff
contends that a factfinder could infer that he "would suffer an inability to sleep without
his prescribed CPAP machine and that such a denial prevented access to the established
program or activity of sleep." (*Id.* at p. 8).

The statutory purpose of requiring inmates to exhaust administrative remedies is
to "give the prison administration an opportunity to fix the problem-or to reduce the
damages and perhaps to shed light on factual disputes that may arise in litigation even if
the prison's solution does not fully satisfy the prisoner." *Pozo*, 286 F.3d at 1024. A
grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress

is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *Turley v. Rednour*, 729 F.3d
645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the
state to the problem and invite corrective action.") (internal quotation marks and citation
omitted). Notably, however, grievances that do not provide notice of an inmate's actual
claim are insufficient to exhaust remedies as to that claim. *See Ross v. Lamb*, No. 19-CV-
577-DWD, 2021 WL 4820369, at *3 (S.D. Ill. Oct. 15, 2021) (A grievance that primarily
discussed a disciplinary ticket was "insufficient to alert prison officials that [the plaintiff]
was grieving the failure to protect him from a dangerous situation or the failure to get
him adequate medical care in its aftermath.").

Having thoroughly reviewed Grievance No. 980-04-22, the Court finds that
grievance does not identify Plaintiff's ADA/RA claim raised in Count 3 (*see generally* Doc.
45-1 at pp. 6-7). Significantly, Grievance No. 980-04-22 includes a lengthy discussion of
the removal of Plaintiff's CPAP machine, the information Plaintiff was told relating to its
return, the harms he suffered due to its removal, and the "deliberate indifference" to his
medical needs displayed by prison officials in removing his CPAP machine and delaying
its return (*Id.*). Notably absent from Plaintiff's grievance, however, is any direct
discussion of Plaintiff's alleged disability, need for an accommodation, or belief that he
was being denied benefits, services, or activities (*Id.*). *See Wagoner v. Lemmon*, 778 F.3d
586, 592 (7th Cir. 2015) ("To establish a violation of Title II of the ADA, the plaintiff must
prove that he is a qualified individual with a disability, that he was denied the benefits
of the services, programs, or activities of a public entity or otherwise subjected to
discrimination by such an entity, and that the denial or discrimination was by reason of

his disability."). Thus, in the same way the prison officials' responses indicate that at the time of review, they perceived Grievance No. 980-04-22 as solely identifying Plaintiff's deliberate indifference claims (*see* Doc. 45-1 at pp. 3-5), the Court's own analysis leads to the same conclusion. Quite simply, nothing in Grievance No. 980-04-22—from its recollection of events and interactions related to his CPAP machine's confiscation and delayed return, to its request for relief—provided fair notice that Plaintiff was grieving an ADA/RA issue. And to the extent it even needs to be stated, identifying an Eighth Amendment deliberate indifference claim is not the same as identifying an ADA/RA claim.[2] *See McDaniel v. Syed*, 115 F.4th 805, 825 (7th Cir. 2024) ("As a general matter, the ADA and the Rehabilitation Act do not apply to issues of allegedly inadequate medical treatment.").

Additionally, while not dispositive on its own, the Court notes that Plaintiff specifically checked the box indicating the nature of his grievance was "Medical Treatment" and left the "ADA Disability Accommodation" box next to it blank (*see Id.* at p. 6).[3] If Grievance No. 980-04-22 was intended to identify Plaintiff's ADA/RA claim, then

---

[2] Furthermore, Grievance No. 980-04-22 states that Plaintiff learned on March 3, 2022, that another inmate had his CPAP machine returned to him by that date (*see* Doc. 45-1 at p. 7). Pertinently, such a distinction from Plaintiff's own situation could provide additional notice of Plaintiff's deliberate indifference claims because it highlights the unique, prolonged delay Plaintiff experienced. However, such a distinction between Plaintiff and other inmates who use CPAP machines arguably undercuts Plaintiff's contention that Grievance No. 980-04-22 provided notice of his ADA/RA claim because it appears to demonstrate that Plaintiff believed the delay he experienced was due to deliberate indifference unique to him, and not due to a failure to accommodate a group of inmates who utilize CPAP machines.

[3] To be clear, the Court is by no means implying that a grievance can only exhaust claims to which the inmate has checked off the corresponding "Nature of Grievance" box on the top of his or her grievance. Rather, in this specific instance, the Court emphasizes this point because it is readily distinguishable from a past case that reviewed a similar exhaustion-based challenge to an ADA claim, wherein the district court found that the ADA accommodation box having been "checked" supported the conclusion that the grievance identified and exhausted the plaintiff's ADA claim. *Brady v. Illinois Dept. of Corr.*, 23-CV-00295-

identifying the nature of his grievance as including "ADA Disability Accommodation" would certainly have aided prison officials in understanding as much. For example, in *Brady v. Illinois Dept. of Corr.*, the district court dealt with a similar challenge as to whether a grievance identified the plaintiff's ADA claim. 23-CV-00295-SMY, 2024 WL 4263103, at *5 (S.D. Ill. Sept. 23, 2024). Significantly, in contrast to Plaintiff's grievance in this case, the grievance at issue in *Brady* specifically marked that it concerned an "ADA Disability Accommodation." *Id.* For this reason, as well as the fact that the plaintiff's grievance mentioned his "ADA watch" and directly identified the "ADA Coordinator," the court found the plaintiff had exhausted his administrative remedies as to that ADA claim. *Id.*

In fact, even Plaintiff's strongest arguments show how readily distinguishable this case is from *Brady*. For instance, Plaintiff argues that Grievance No. 980-04-22 identified his disability by mentioning he had a "chronic illness." (Doc. 47 at pp. 8-9). Yet, at no point does Grievance No. 980-04-22 use the word "disability" or even specify what Plaintiff's chronic illness was (i.e., sleep apnea) (*see* Doc. 45-1 at p. 7). *See Brown v. Fromolz*, 21-CV-542-BHL, 2024 WL 4527288, at *3 (E.D. Wis. Oct. 18, 2024) (Finding a grievance did not exhaust an inmate's administrative remedies because "none of his inmate complaints said that he was 'disabled,' that he had a condition so severe that it prevented him from walking or standing, that he made an ADA/RA request that was improperly denied, or that he believed his ADA/RA rights were even violated at all. The ICE therefore

---

SMY, 2024 WL 4263103, at *5 (S.D. Ill. Sept. 23, 2024); *see also Cortez v. Wexford Health Source, Inc.*, 3:19-CV-01238-SMY-MAB, 2022 WL 802282, at *2 (S.D. Ill. Feb. 23, 2022) (noting several grievances regarded ADA disability accommodation and finding they served to identify and exhaust the plaintiff's corresponding ADA/RA claim).

reasonably construed the three inmate complaints from March 2021 as a 'medical' and/or 'housing' dispute, not a disability for which reasonable accommodations were denied under the ADA.").

Plaintiff's argument that Grievance No. 980-04-22 identified that he was being deprived of a program, activity, or service because it claimed he was being deprived of sleep suffers from similar flaws (Doc. 47 at pp. 8-9). Namely, even when viewed in the light most favorable to Plaintiff, the only portions of Grievance No. 980-04-22 that could be construed as mentioning sleep are two instances where it listed "fatigue" alongside several other symptoms Plaintiff allegedly informed prison officials he was experiencing due to the lack of his CPAP machine (Doc. 45-1 at p. 7). In other words, Grievance No. 980-04-22 never once used the word "sleep" and, on the two occasions where it mentioned "fatigue," it did so in a context that would not have provided prison officials with fair notice that Plaintiff was actually grieving the denial of access to sleep or sleeping facilities by reason of his disability. *See Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023) ("Hacker never described or alluded to any problems with receiving medication, access to Cermak Health's medical services, or access to prison services more generally. Without that link, prison officials did not have fair notice that Hacker wanted the personal listening device because he could not hear medical staff calling out his name while dispensing medication."); *Brown*, 2024 WL 4527288 at *3 ("Brown's inmate complaints from March 2021, complaining about knee pain and that his cellmate's walker posed a 'fire hazard,' would not have given the ICE notice that he was alleging that he was a disabled inmate whose ADA/RA rights were violated.").

For all these reasons, the Court finds that Grievance No. 980-04-22 failed to adequately identify Plaintiff's ADA/RA claim in Count 3. *See Williams v. Baldwin*, 239 F. Supp. 3d 1084, 1092 (N.D. Ill. 2017) ("But plaintiff never formally complained about, or even mentioned, the TABE test on his written grievance, even though it could have easily been included, and that failure to comply with the clear requirements of the IDOC's grievance policy is what now forecloses his claim."); *Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020) ("Schillinger's grievance raised two entirely different problems: no guards were nearby when the attack occurred, and the responding guards took too long to come to his aid. This did not give the prison notice of the claim at issue here, which concerns events preceding the attack and conduct by officers who were not mentioned in the grievance."). Furthermore, Plaintiff has not disputed Defendant Hughes' evidence or attempted to argue that he filed other grievances which could have exhausted his administrative remedies for his ADA/RA claim. Consequently, Plaintiff has failed to exhaust his administrative remedies as to his ADA/RA claim in Count 3. As a result, Defendant Hughes' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is GRANTED (Doc. 45) and Count 3 is DISMISSED without prejudice. Furthermore, because Count 3 was the only claim proceeding against Defendant Hughes, Defendant Hughes is also DISMISSED without prejudice.

II.    *Plaintiff's Motions for Recruitment of Counsel*

Plaintiff has also filed a Motion to Appoint Counsel (Doc. 51) and Motion for Recruitment of Counsel (Doc. 53). In those motions, Plaintiff argues that he should be appointed counsel because he lacks the capabilities to continue representing himself, is

incarcerated, and suffers from numerous medical conditions that he must prioritize (*see* Doc. 53 at pp. 1-2). Additionally, in Plaintiff's "Motion to Appoint Counsel," he also asks the Court to reconsider its prior Order Dismissing John Doe Officer and Jane Doe Nurse because he believes Defendants know who the unknown Defendants are, and Plaintiff has no further means of identifying them (Doc. 51 at p. 1). The Court's analysis of Plaintiff's motions focuses upon his later-filed Motion for Recruitment of Counsel (Doc. 53) because that motion includes additional, relevant documentation that supports his request for counsel (*compare* Doc. 53 *with* Doc. 51).

Generally, when presented with a request to appoint counsel, the Court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). Here, Plaintiff's Motion for Recruitment of Counsel demonstrates both Plaintiff's indigency (*see* Doc. 53 at pp. 8-10) and his reasonable attempts to obtain counsel on his own (*Id.* at pp. 4-7) (containing three letters Plaintiff sent to prospective counsel and one rejection letter he received). For these reasons, the Court finds Plaintiff has satisfied the first prong of *Pruitt* by demonstrating his reasonable attempts to obtain counsel on his own.

Turning to the second prong of *Pruitt*, several factors warrant the recruitment of counsel on Plaintiff's behalf. For one, Plaintiff is no longer at Pinckneyville, the facility where the events in question took place (*see* Doc. 38) (notifying the Court that Plaintiff was moved from Pinckneyville to Centralia Correctional Center). As the Seventh Circuit

has explained, "a prisoner who is transferred to a facility where the events underlying his claims did not take place faces additional hurdles." *Eagan v. Dempsey*, 987 F.3d 667, 683 (7th Cir. 2021) (internal quotation marks and citation omitted). Additionally, while Plaintiff's filings to date have appeared competent, this matter is now moving beyond exhaustion and into merits-based discovery, which involves substantially more challenging tasks. "Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out." *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015).

Moreover, the Seventh Circuit has also "noted the increased complexity in constitutional claims involving the state of mind of the defendant, such as deliberate indifference." *Eagan*, 987 F.3d at 683. And here, each of Plaintiff's remaining claims are deliberate indifference claims. In further support of his motion, Plaintiff has also emphasized that his filings to date have been prepared with the assistance of other inmates, but their assistance is not guaranteed or necessarily consistent, and they are often transferred or otherwise unable to continue to assist him (*see* Doc. 53 at p. 10).[4] For

---

[4] However, the Court briefly notes that Plaintiff's arguments about his ongoing medical issues are not particularly persuasive. Numerous district courts within the Seventh Circuit have held that medical issues such as migraines, chronic pain, and other physical disabilities are better addressed by granting extensions of time rather than recruiting counsel. *See, e.g., O'Quinn v. Vanderhove*, No. 19-CV-01010-NJR, 2020 WL 1955254, at *3 (S.D. Ill. Apr. 23, 2020); *Lovejoy v. Lashbrook*, No. 19-CV-00016-SMY, 2019 WL 1452701, at *3 (S.D. Ill. Apr. 2, 2019); *Yerks v. McArdle*, No. 19-CV-595-WMC, 2021 WL 5161746, at *2 (W.D. Wis. Nov. 5, 2021); *Voss v. Marathon Cnty.*, No. 18-CV-540-JDP, 2020 WL 68236, at *3 (W.D. Wis. Jan. 7, 2020) ("[Pain and numbness] may require extensions of time in some situations, but Voss hasn't submitted evidence showing that he is incapable of representing himself.").Thus, while this factor may provide limited, additional support for Plaintiff's motion, the other factors highlighted by Plaintiff provide the primary reasons why the Court is granting Plaintiff's motion.

all these reasons, the Court GRANTS Plaintiff's Motion for Recruitment of Counsel (Doc. 53). An attorney will be recruited to represent Plaintiff in a separate order.

In light of this determination, as well as the deficiencies identified in Plaintiff's earlier-filed Motion to Appoint Counsel, that Motion is DENIED as MOOT (Doc. 51). Additionally, to the extent Plaintiff's Motion to Appoint Counsel seeks reconsideration of the Court's prior Order dismissing Defendants John Doe Officer and Jane Doe Nurse, that request is DENIED (*see Id.*).

First and foremost, Plaintiff's Motion to Appoint Counsel is titled "Re: Memorandum and Order April 24, 2025." (Doc. 51 at p. 1). Thus, on its face, it does not purport to be a Motion for Reconsideration and does not provide fair notice of any such request contained therein. Moreover, Plaintiff's Motion focuses upon his request for counsel, devoting the majority of the one and a half page filing to explaining why Plaintiff is unable to litigate this matter on his own (*see Id.* at pp. 1-2). And most importantly, Plaintiff's motion does not direct the Court's attention to any sufficient justification for overturning the Court's Order dismissing the unknown Defendants. *Wilkins v. Just Energy Group, Inc.*, 171 F. Supp. 3d 798, 801 (N.D. Ill. 2016) ("Rather, a motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or party's contention that the court ruled on an issue that was not properly before it.").

Here, Plaintiff's only argument for reconsideration, other than that he would benefit from the assistance of counsel, is that he does not yet know the unknown Defendants and Defendants have failed to provide him with the unknown Defendants'

identities (Doc. 51 at pp. 1-2). However, the John Doe Scheduling Order required Defendant Barwick (in his official capacity only) to either provide the identities of the unknown Defendants, OR, if Defendant Barwick was unable to make a specific identification, to provide documents or files that could assist Plaintiff in their identification (Doc. 36 at p. 3). And crucially, the Court's Order stated that Plaintiff's "[f]ailure to file a motion to substitute by this date will result in the dismissal of the Jane Doe Nurse and John Doe Officer without prejudice." (*Id*.).

Yet, no motion to substitute, or even a motion for extension of time, was filed by Plaintiff on or before February 11, 2025. In fact, only one filing was made by Plaintiff between the date the Initial Scheduling Order was entered and the deadline for Plaintiff to file a motion to substitute (*see* Doc. 37). That filing was a motion for counsel and it made no reference to any delays or failure on Defendants' part to provide documents or identification information of the unknown Defendants (*see Id*.).

Admittedly, Plaintiff also filed a Notice on February 25, 2025, which discusses the Scheduling Order (Doc. 40). However, that Notice came approximately two weeks after the deadline to file a motion to substitute had lapsed and it neither sought an extension of the substitution deadline nor otherwise attempted to substitute the unknown Defendants (*Id*.). In addition, while that Notice alludes to an alleged failure by Defendants to provide certain medical records, it at no points indicates that such records were necessary to identify the unknown Defendants and/or comply with the Court's deadline to substitute. Ultimately, if Plaintiff had intended to notify the Court of issues in complying with the deadline to substitute the unknown Defendants, he should have

notified the Court of such prior to the deadline lapsing and done so in an appropriate motion. However, he did not do so. Consequently, to the extent Plaintiff's instant Motion to Appoint Counsel can even be construed as a motion to reconsider, that request is DENIED (Doc. 51).

### III. *Plaintiff's Motion for Status*

Finally, Plaintiff has filed a Motion for Status, which inquires into the status of Defendant Hughes' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies, as well as his request for the Court to reconsider its prior ruling dismissing Defendants John Doe Officer and Jane Doe Nurse (Doc. 54; *see also* Doc. 48). The Court **GRANTS** Plaintiff's Motion for Status (Doc. 54) and provides him with the following status update.

In light of the Court's determinations made in this Order, Plaintiff's Complaint will proceed as follows:

- **Count 2** against Defendant Christine Brown;

- **Count 4** against Defendant Wexford Health Care Source, Inc.;

- **Count 5** against Defendant Christel Crow;

(*see also* Doc. 11 at pp. 4-7; Doc. 48). Meanwhile, Defendants John Doe Officer and Jane Doe Nurse, as well as Count 1, were previously **DISMISSED** for the reasons specified in the Court's Order dated April 24, 2025 (Doc. 48), and nothing in Plaintiff's instant filings warrants reconsideration of that ruling. Finally, Count 3 is **DISMISSED without prejudice** for the reasons specified above. Consequently, Defendant Latoya Hughes is

**DISMISSED without prejudice** and judgment will be entered in her favor at the conclusion of this case.

Finally, the Court notes that this action is now moving beyond the exhaustion of administrative remedies phase and Plaintiff is to be recruited counsel. Accordingly, after Plaintiff's recruited counsel has entered his or her appearance and had time to familiarize himself/herself with the case, the Court will hold a status hearing. At the hearing, the Court will discuss with counsel, amongst other things: lifting the stay on merits-based discovery and entering a Final Scheduling Order.

### CONCLUSION

For the reasons discussed above, Defendant Hughes' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **GRANTED** (Doc. 45) and Count 3 is **DISMISSED without prejudice**. Consequently, Defendant Hughes is likewise **DISMISSED without prejudice**.

Additionally, Plaintiff's Motion for Recruitment of Counsel is **GRANTED** (Doc. 53) and Plaintiff's earlier-filed Motion to Appoint Counsel is **DENIED as MOOT** (Doc. 51)**.** Finally, Plaintiff's Motion for Status is **GRANTED** (Doc. 54), consistent with the status update provided above. An attorney will be recruited to represent Plaintiff by separate order. After Plaintiff's recruited counsel has entered his or her appearance and had time to familiarize himself/herself with the case, the Court will hold a status hearing to discuss, among other things, lifting the stay on merits-based discovery and entering a Final Scheduling Order.

**IT IS SO ORDERED.**

**DATED:  January 6, 2026**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**